UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH
CENTRAL DIVISION

| | |
|---|---|
| RONALD S.,<br><br>    Plaintiff,<br><br>v.<br><br>KILOLO KIJAKAZI, Acting Commissioner of the Social Security Administration,<br><br>    Defendant. | **MEMORANDUM DECISION AND ORDER AFFIRMING THE COMMISSIONER'S DECISION DENYING DISABILITY BENEFITS**<br><br>Case No. 2:21-cv-00358<br><br>Magistrate Judge Daphne A. Oberg |

Plaintiff Ronald S.[1] filed this action asking the court to reverse the decision of the Acting Commissioner of the Social Security Administration ("Commissioner") denying his application for supplemental security income under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381–85.  (Opening Br., Doc. No. 17.)  Specifically, Mr. S. asks for the case to be remanded to the Commissioner for further administrative proceedings, including a *de novo* hearing.  The Administrative Law Judge ("ALJ") denied Mr. S.'s application, finding he did not qualify as disabled.  (Certified Tr. of Admin. R. ("Tr.") 16–32, Doc. No. 14.)  The court[2] has carefully reviewed the record and the parties' briefs.[3]  Because the ALJ applied the correct legal standards and his findings are supported by substantial evidence, the Commissioner's decision is affirmed.

---

[1] Pursuant to best practices in the District of Utah addressing privacy concerns in certain cases, including Social Security cases, the court refers to Plaintiff by his first name and last initial only.

[2] The parties consented to proceed before a magistrate judge in accordance with 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure.  (Doc. No. 11.)

[3] The appeal will be determined on the written memoranda, as oral argument is unnecessary. DUCivR 7-1(g).

1

## STANDARD OF REVIEW

Section 1383(c)(3) of Title 42 of the United States Code provides for judicial review of a final decision of the Commissioner. This court reviews the ALJ's decision and the whole record to determine if substantial evidence supports the ALJ's factual findings and whether the ALJ applied the correct legal standards. 42 U.S.C. § 405(g); *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007); *Glenn v. Shalala*, 21 F.3d 983, 984 (10th Cir. 1994). The court may not substitute its judgment for that of the ALJ nor may it reweigh the evidence. *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004).

"[A]n ALJ's factual findings . . . shall be conclusive if supported by substantial evidence." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1153, ___ U.S. ___ (2019) (internal quotation marks omitted). Although the evidentiary sufficiency threshold for substantial evidence is "not high," it is "more than a mere scintilla." *Id.* at 1154 (internal quotation marks omitted). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (internal quotation marks omitted). "The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence." *Lax*, 489 F.3d at 1084 (internal quotation marks omitted).

## APPLICABLE LAW

The Social Security Act defines "disability" as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). Under the Social Security Act, an individual is considered disabled "only if his physical or mental impairment or

impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Id.* § 1382c(a)(3)(B).

In determining whether a claimant qualifies as disabled within the meaning of the Social Security Act, the ALJ employs a five-step sequential evaluation. The analysis requires the ALJ to consider whether:

1) The claimant presently engages in substantial gainful activity;

2) The claimant has a severe medically determinable physical or mental impairment;

3) The impairment is equivalent to one of the impairments which precludes substantial gainful activity, listed in the appendix of the relevant disability regulation;

4) The claimant has a residual functional capacity to perform past relevant work; and

5) The claimant has a residual functional capacity to perform other work in the national economy considering his or her age, education, and work experience.

*See* 20 C.F.R. § 416.920(a)(4); *Bowen v. Yuckert*, 482 U.S. 137, 140–42 (1987); *Williams v. Bowen*, 844 F.2d 748, 750–51 (10th Cir. 1988). The claimant has the burden, in the first four steps, of establishing the disability. *Ray v. Bowen*, 865 F.2d 222, 224 (10th Cir. 1989). At step five, the burden shifts to the Commissioner to show the claimant retains the ability to perform other work existing in the national economy. *Id.*

## PROCEDURAL HISTORY

Mr. S. originally applied for supplemental security income benefits on October 24, 2017. (Tr. 603.) He initially alleged disability beginning on June 1, 2010, but later changed the onset date to October 24, 2017. (*Id.* at 603, 625.) After Mr. S.'s claim was denied, the Appeals Council vacated the ALJ's October 25, 2019 decision and remanded the case for further

3

consideration. (*Id.* at 434–35.) On remand, the Appeals Council ordered the ALJ to consider new evidence, to evaluate Mr. S.'s use of an assistive device, to reconsider whether Mr. S. had an impairment equivalent to one of the impairments listed in the disability appendix, and to reconsider Mr. S.'s residual functional capacity ("RFC").[4] (*Id.*) On February 26, 2021, after a hearing on remand, the ALJ found Mr. S. was not disabled. (*Id.* at 16–32.)

At the first step of the five-step sequential evaluation, the ALJ found Mr. S. had not engaged in substantial gainful activity since October 24, 2017. (*Id.* at 18.) At step two, the ALJ found Mr. S. had the severe impairments of degenerative disc disease of the cervical and lumbar spine, left shoulder and knee arthropathy, congenital myotonic dystrophy, asthma, diabetes mellitus, hearing loss, anxiety, depression, ADHD, and personality disorder. (*Id.*) The ALJ also found Mr. S. had the nonsevere impairments of hypertension, left wrist impairment, gastritis, and duodenitis. (*Id.* at 19.) At step three, the ALJ concluded Mr. S.'s impairments did not meet or equal an impairment listing. (*Id.*) The ALJ determined Mr. S. had the RFC to perform sedentary work with the following limitations:

> [H]e requires use of an assistive device like a cane for prolonged ambulation and uneven surfaces. He can occasionally climb ramps and stairs. He can never climb ladders, ropes, and scaffolds. He can occasionally balance, stoop, kneel, crouch, and crawl. He can occasionally lift overhead with his left non-dominant upper extremity. He can occasionally be exposed to loud noise, extreme cold, extreme heat, vibration, and pulmonary irritants. He can never be exposed to hazards such as unrestricted heights and dangerous moving machinery. Due to mental limits, he can perform complex tasks. He can perform goal-oriented but not assembly line-paced work. He can occasionally interact with co-workers, supervisors, and the general public. He can adapt to routine changes in the workplace.

(*Id.* at 21.) Based on this RFC assessment and the testimony of a vocational expert, the ALJ concluded at step four that Mr. S. could not perform any past relevant work. (*Id.* at 31.)

---

[4] An individual's RFC is the most the individual can do considering his/her/their limitations. 20 C.F.R. § 416.945(a)(1).

However, at step five, the ALJ found jobs existed in significant numbers in the national economy which Mr. S. could perform considering his age, education, work experience, and RFC—including touchup inspector, printed circuit board checker, and dowel inspector. (*Id.* at 31–32.) Therefore, the ALJ found Mr. S. was not disabled. (*Id.* at 32.)

The Appeals Council denied Mr. S.'s subsequent request for review, (*id.* at 1–4), making the ALJ's decision final for purposes of judicial review.

## DISCUSSION

Mr. S.'s claims of error consist of two challenges to the ALJ's RFC finding. First, he contends the RFC finding is unsupported by substantial evidence because the ALJ improperly evaluated the opinions of Isaac Rasmussen, M.D., and Elizabeth Balle, LCSW. (Opening Br. 9, Doc. No. 17.) Next, he argues the ALJ failed to incorporate his findings as to Mr. S.'s mental limitations into the RFC. (*Id.* at 24.)

A. Evaluation of Medical Opinions

The Social Security Administration implemented new regulations for evaluating medical evidence for cases filed on or after March 27, 2017, like Mr. S.'s. *See Revisions to Rules Regarding the Evaluation of Med. Evidence*, 82 Fed. Reg. 5844 (Jan. 18, 2017) (technical errors corrected by 82 Fed. Reg. 15132 (Mar. 27, 2017)); 20 C.F.R. § 416.920c(b). Under these regulations, the ALJ does not "defer or give any specific evidentiary weight, including controlling weight," to any medical opinions. 20 C.F.R. § 416.920c(a). Instead, the ALJ must assesses the persuasiveness of medical opinions by evaluating the following factors: (1) supportability, (2) consistency, (3) relationship with the claimant (including length, frequency, nature, and type), (4) specialization, and (5) any other relevant factors. *Id.* § 416.920c(c)(1)–(5). Supportability and consistency are the most important factors—and the ALJ must explain how

she considered these two factors. *See id.* § 416.920c(b)(2). For supportability, the ALJ examines how well medical sources support their own opinions with "objective medical evidence" and "supporting explanations." *Id.* § 416.920c(c)(1). For consistency, the ALJ considers whether the medical opinion is consistent with evidence from other medical and nonmedical sources in the record. *Id.* § 416.920c(c)(2). The ALJ can, but is not required to, explain how she considered the remaining factors.[5] *Id.* § 416.920c(b)(2).

These new regulations do not "alter the Tenth Circuit's requirement that an ALJ must explain her rejection of any medical source opinions in the record concerning the claimant's RFC." *Gonzales v. Kijakazi*, No. 20-914, 2022 U.S. Dist. LEXIS 1778, at *30 (D.N.M. Jan. 5, 2022) (unpublished); *see also Desiree T. v. Kijakazi*, No. 20-1330, 2022 U.S. Dist. LEXIS 35468, at *12 (D.N.M. Mar. 1, 2022) (unpublished) ("[T]here is no reason to think the regulations altered settled principles of administrative law pertaining to how ALJs review evidence."). This requirement stems in part from the premise that an ALJ must discuss any "significantly probative evidence [she] rejects," and enables courts to conduct a meaningful review. *Gonzales*, 2022 U.S. Dist. LEXIS 1778, at *30 (alteration in original) (quoting *Clifton v. Chater*, 79 F.3d 1007, 1009–10 (10th Cir. 1996)).

In this case, the ALJ did what the regulations require: he explained how persuasive he found the medical opinions based on factors of supportability and consistency. And his assessment is supported by substantial evidence.

---

[5] The ALJ must only articulate how she considered the remaining factors where she finds two different medical opinions regarding the same issue are consistent with the record and equally well-supported. 20 C.F.R. § 404.1520c(b)(2)–(3).

6

### 1. Dr. Rasmussen's Opinions

Mr. S. argues the ALJ erred by finding Dr. Rasmussen's opinions unpersuasive. Dr. Rasmussen primarily treated Mr. S. for pain. (Tr. 1362.) In January 2018, he issued a letter in which he opined that Mr. S.'s pain limited his ability to walk, stand, and sit, and was best controlled when he was lying down. (*Id.*) He further opined that Mr. S.'s impairments prevented him from lifting, pulling, and holding objects, and caused poor functioning. (*Id.*) Dr. Rasmussen also noted that Mr. S. required a cane to ambulate. (*Id.* at 1243.) The ALJ found Dr. Rasmussen's opinions unpersuasive but noted Mr. S.'s need to use a cane was accounted for the RFC assessment. (*Id.* at 28–29.)

Assessing supportability, the ALJ found Dr. Rasmussen's opinion vague because he did not assess or explain the degree to which Mr. S. was limited in his ability to stand, sit, and walk, despite opining he had some limitations in these areas. (*Id.* at 28.) The ALJ also found Dr. Rasmussen's opinion unsupported by "the objective results of his office visits." (*Id.*) As one example, the ALJ noted that on the same day Dr. Rasmussen opined Mr. S.'s impairments prevented him from lifting, pulling, and holding objects, he also found Mr. S. had normal range of motion and strength. (*See id.* (citing *id*. 1372).)

With regard to supportability, Mr. S. concedes Dr. Rasmussen did not specify the extent to which Mr. S. was limited in his ability to walk, sit, or stand. (Opening Br. 19, Doc. No. 17.) Dr. Rasmussen's observation that Mr. S.'s pain was best controlled by lying down is no substitute for an opinion as to the extent of Mr. S.'s functional limitations. The ALJ restricted Mr. S. to sedentary work with the use of an assistive device for prolonged ambulation and uneven surfaces. (*See* Tr. at 21, 29.) And sedentary jobs only require occasional walking and standing. *See* 20 C.F.R. § 416.967(a). Mr. S. has failed to show how Dr. Rasmussen's opinion

7

that he had unspecified limits in his ability to sit and stand—and his pain was best controlled by lying down—meant he was unable to work in a sedentary job with the additional restriction of an assistive device. In other words, the ALJ reasonably accounted for Mr. S.'s mobility limitations in the RFC finding.

Mr. S. also argues the ALJ improperly failed to account for Dr. Rasmussen's opinion regarding Mr. S.'s inability to lift, pull, and hold objects. (*See* Opening Br. 19, Doc. No. 17.) But the ALJ found Dr. Rasmussen's opinion unsupported by his own treatment note—from the same date as his opinion letter—showing normal strength and range of motion. (*See* Tr. 28 (citing *id*. at 1372).) And this reflects one of many times throughout the years that Dr. Rasmussen found Mr. S. exhibited a normal range of motion and strength. (*See, e.g., id.* at 1079 (May 27, 2016), 1081 (July 19, 2016), 1107 (Nov. 11, 2016), 1118 (June 28, 2017), 1372 (Jan. 27, 2018).) The ALJ properly addressed the supportability of Dr. Rasmussen's opinions, and the ALJ's findings are supported by more than a mere scintilla of evidence. While the record could support a contrary finding, it is not the court's role to reweigh the evidence. *See Langley*, 373 F.3d at 1118.

Assessing consistency, the ALJ found Dr. Rasmussen's opinion inconsistent with a consultative examination before the period of disability[6] and with treatment notes from the relevant period showing "normal cerebellar function and higher musculoskeletal functions." (Tr. 28.) The ALJ then noted Dr. Rasmussen's opinion that Mr. S. required a cane to ambulate was consistent with records showing Mr. S.'s "consistent presentation with an assistive device." (*Id.* at 29.)

---

[6] The ALJ appears to refer to the consultative examination of Dr. Joseph Fyans. (*See* Tr. 24; Opening Br. 21, Doc. No. 17.)

The ALJ correctly considered the consistency of Dr. Rasmussen's opinion with other medical evidence and opinions, and his findings are supported by more than a mere scintilla of evidence. Mr. S. complains that the ALJ did not analyze the consistency between Dr. Rasmussen's opinion that Mr. S. was limited in his ability to lift, pull, and hold objects—and the medical evidence from Dr. Pahl Bench, Dr. Gary Child, Dr. Alan Colledge, Dr. Thu Nguyen, and Ms. Shannan McLaughlin. (Opening Br. 22–23, Doc. No. 17.) But an ALJ is not required to *discuss* every piece of evidence, so long as the record shows the ALJ *considered* all the evidence. *Chater*, 79 F.3d at 1009–10. And it is apparent the ALJ considered the entire record. He addressed Dr. Bench's opinion specifically, finding it unpersuasive. (Tr. 29.) The ALJ cited to evidence from the Alpine Pain Clinic, where Dr. Child worked—including evidence that Mr. S. consistently used a wheelchair, cane, or motorized scooter. (*See id.* at 20, 26, 28, 30.) He cited to evidence from Revere Health, where Dr. Colledge and Dr. Nguyen worked—including evidence that Mr. S. used a wheelchair and that his gait was antalgic. (*See id.* at 20, 21, 25, 26.) And he cited to records from Stonebridge Health and Hospice, where Ms. McLaughlin worked. (*See id.* at 30.) This is sufficient to show the ALJ considered all the evidence. And Mr. S. has not established the ALJ had an obligation to articulate the consistency of each aspect of Dr. Rasmussen's opinion with each record from every provider referenced in the administrative record.

In considering the overall record, the ALJ found Dr. Rasmussen's opinion inconsistent with evidence showing normal cerebellar and higher musculoskeletal functions. (*See* Tr. 28.) This conclusion is supported. (*See id.* at 1096, 1272, 1665, 1803, 1937 (noting normal cerebellar function); *id.* at 1803, 1807, 1817, 1821, 1937, 2077, 2082, 2094, 2101 (noting normal higher musculoskeletal functions).) Mr. S. argues the ALJ's findings are illegitimate because the ALJ

9

did not include citations to this evidence and he drew no comparisons between the evidence and Dr. Rasmussen's opinion. (Reply 3, Doc. No. 21.) But Mr. S.'s argument fails where the ALJ addressed (and cited directly to) this same evidence elsewhere in his decision. (*See* Tr. 20, 25–26); *cf. Endriss v. Astrue*, 506 F. App'x 772, 775–76 (10th Cir. 2012) (unpublished) (finding no error where ALJ failed to contemporaneously discuss records but addressed them earlier in the decision). Mr. S. may not agree with the ALJ's stated basis for finding Dr. Rasmussen's opinion inconsistent with the record, but it is supported by more than a mere scintilla of evidence.

Mr. S. complains the ALJ also found Dr. Rasmussen's opinion inconsistent with objective testing which preceded the period of claimed disability. (*See* Tr. 28.) Although evidence from before the relevant time period would not have been sufficient, on its own, to justify discounting Dr. Rasmussen's opinions, the ALJ also relied on inconsistent evidence from within the relevant time period, as set forth above. Under these circumstances, the ALJ did not err in noting additional inconsistent evidence from before the relevant time period—particularly where Mr. S. alleged longstanding physical conditions predating this period. (*See* Tr. 603.)

Mr. S. argues other medical evidence supports an additional RFC restriction related to limitations in the use of his hands and fingers. Mr. S.'s argument as to this other medical evidence merely asks the court to reweigh the evidence. Where the ALJ's findings are supported, the court may not reweigh the evidence or substitute its judgment for that of the ALJ. *See Langley*, 373 F.3d at 1118. Moreover, Dr. Rasmussen did not specifically opine on the degree to which Mr. S. could use his hands and fingers; he concluded more generally that Mr. S.'s impairment prevented him from "lifting, pulling, and holding objects." (Tr. 1362.) Mr. S. cites to one medical note where Dr. Rasmussen indicated Mr. S.'s left-hand dexterity was "very affected by the wrist." (Opening Br. 18, Doc. No. 17 (citing Tr. 1237).) Mr. S. also cites to

10

evidence of generally increased weakness, decreased sensation, and difficulty ambulating, (*see id.* at 22–23), but he does not link that evidence to limitations in handling. The evidence most relevant to manual manipulation is a record from Dr. Bench indicating Mr. S. wore a left wrist brace. (*Id.* at 22 (citing Tr. 1855).) But this observation does not appear to be tied to any medical finding that Mr. S. was limited in the use of his hands or fingers. Mr. S. has not shown the ALJ erred by failing to include a handling limitation.

And the ALJ included lifting limitations in the RFC finding. Sedentary work encompasses a limitation on lifting, as it "involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools." 20 C.F.R. § 416.967(a). The sedentary RFC is based in part on the ALJ's finding that Mr. S.'s "use of an assistive device for ambulation would limit his ability to lift, carry, stand, walk, and climb more than assessed by the state agency physical consultants." (Tr. at 28.) And the ALJ further restricted Mr. S. to only occasional lifting "overhead with his left non-dominant upper extremity." (*Id.* at 21.)

The record evidence supports a finding that Mr. S. could perform some lifting, pulling, and holding—contrary to Dr. Rasmussen's opinion that he was entirely prevented from these activities. Mr. S. himself testified he could lift up to ten pounds with his right arm and five pounds with his left arm. (*Id.* at 281.) And Mr. S. reported he could reach, just "not much," and he could use his hands "some." (*Id.* at 732.) Thus, Mr. S.'s own testimony is inconsistent with Dr. Rasmussen's opinion. The ALJ also noted Mr. S.'s testimony that he played video games, used a computer, used a cell phone, cleaned, took out the trash, did laundry, cooked, shopped, and painted. (*Id.* at 22–23.) This constitutes substantial evidence sufficient to support the ALJ's conclusion that Mr. S. was not entirely unable to lift, pull, or hold.

Because the ALJ applied the correct legal framework, he explained how he considered supportability and consistency, and his assessment is supported by more than a mere scintilla of evidence, the ALJ did not err in his evaluation of Dr. Rasmussen's opinions.

2. *Ms. Balle's Opinions*

Mr. S. next argues the ALJ failed to properly evaluate the opinions of his therapist, Elizabeth Balle.

On May 5, 2019, Ms. Balle provided a mental capacity assessment on a checkbox form. (Tr. 1569–71.) Ms. Balle listed Mr. S.'s diagnoses as moderate recurrent major depression and generalized anxiety disorder. (*Id.* at 1569.) She opined Mr. S. had marked limitations in his ability to complete a normal workday and workweek without interruption from psychologically based symptoms, respond appropriately to changes in a routine work setting, and travel to unfamiliar places. (*Id.* at 1570–71.) She opined he had "moderate to marked" restrictions in activities of daily living. (*Id.* at 1571.) Ms. Balle also opined Mr. S. had moderate limitations in numerous areas, including his ability to:

- maintain regular attendance and be punctual;
- work in coordination with and in proximity to others without being unduly distracted;
- perform at a consistent pace without an unreasonable number and length of rest periods;
- get along with co-workers or peers without unduly distracting them or exhibiting behavioral extremes;
- deal with normal work stress;
- deal with stress of semi-skilled and skilled work;
- use public transportation;
- maintain social functioning; and
- maintain concentration, persistence, or pace.

(*Id.* at 1570–71.) In addition, Ms. Balle assessed moderate limitations in Mr. S.'s ability to set realistic goals or make plans independently of others, noting in the margin that he "seem[ed] very dependent on others to meet his needs." (*Id.* at 1570.) She predicted Mr. S. would be

12

absent from work about four days per month as a result of his impairments. (*Id.* at 1571.) On the narrative portion of the form, Ms. Balle explained her conclusions were "based on the therapeutic process and observations," noting her clinic did not provide testing services. (*Id.*) She also stated she had treated Mr. S. for approximately seven months. (*Id.*)

Ms. Balle provided an additional narrative statement on February 2, 2021. (*Id.* at 2378–79.) In it, she identified Mr. S.'s diagnoses as "major depression, recurring, moderately severe," general anxiety disorder, pain disorder with psychological factor, and chronic low self-esteem. (*Id.* at 2378.) She opined Mr. S. had "functional impairment in important areas of his life," including "social interaction, being able to participate in society, sustaining regular routines, and performing many activities of daily living." (*Id.*) She stated he had "struggled for years with persistent, complex thoughts and feelings that characterize major depressive disorders," including changes in sleep, appetite, energy levels, ability to focus, decreased interest and pleasure in activities, and thoughts of self-harm. (*Id.*) She also noted that Mr. S. experienced "excessive worry and anxiety that interfere[d] with his daily activities, responsibilities, and relationships." (*Id.*) Ms. Balle recommended ongoing mental health therapy and opined Mr. S. was "not able to work at the current time." (*Id.* at 2379.)

The ALJ summarized Ms. Balle's opinions and found them unpersuasive. (*Id.* at 29.) He stated Ms. Balle "provided no explanation to support her limitations in the checkbox form" and "no rationale in her narrative statement." (*Id.*) He noted there were "no objective examinations in the treatment notes from Ms. Balle to support her opinion." (*Id.*) The ALJ also found Ms. Balle's opinions inconsistent with other medical evidence in the record, including:

- the objective testing and psychological consultative examination of Dr. Ryan Houston in July 2014;

- the examination of Milo Garcia, CMHC, in June 2017;
- the "objective evidence in [Mr. S.'s] very recent treatment notes with Kelly Wosnick, NP-C, which showed improvement with medication and grossly unremarkable status examinations"; and
- Mr. S.'s "consistently normal mental status examinations throughout the relevant period in his other treatment notes."

(*Id.*) Finally, the ALJ found Ms. Balle's opinions were inconsistent with the prior administrative medical findings. (*Id.*)

The ALJ properly evaluated Ms. Balle's opinions. First, the ALJ evaluated her opinions using the correct legal framework. He assessed the supportability and consistency of her opinions and explained how he considered these factors, as required under the regulations. *See* 20 C.F.R. § 416.920c(b)–(c). Further, as explained below, the ALJ's assessment is supported by substantial evidence.

The ALJ reasonably concluded Ms. Balle's opinions lacked supporting explanations and rationale. (*See* Tr. 29.) Mr. S. argues Ms. Balle did provide "some brief explanation," pointing to the fact that she listed his diagnoses, stated her conclusions were based on the therapeutic process, and indicated he was dependent on others. (Opening Br. 10, Doc. No. 17.) But aside from a single marginal notation regarding his dependency, Ms. Balle failed to provide any meaningful explanation supporting the specific functional limitations she assessed on the checkbox form. (*See* Tr. 1569–71.) She merely listed Mr. S.'s diagnoses without providing any rationale connecting these diagnoses to the assessed limitations. (*See id.* at 1569.) And she did not explain what observations supported her assessment. (*See id.* at 1571.) Although Ms. Balle provided some additional detail regarding Mr. S.'s diagnoses and symptoms in the 2021 letter,

14

she failed to provide rationale connecting these symptoms with specific functional limitations identified on the checkbox form. (*See id.* at 2378–79.) Thus, the ALJ did not err in finding Ms. Balle's opinions lacked internal support.

The record also supports the ALJ's finding that there were no "objective examinations" in Ms. Balle's treatment notes to support her opinions. (*See id.* at 29.) Ms. Balle expressly stated she had conducted no testing, (*id.* at 1571), and Mr. S. acknowledges Ms. Balle performed no mental status examinations, (Opening Br. 13, Doc. No. 17). Nevertheless, Mr. S. argues there was objective evidence supporting Ms. Balle's opinions in her therapy record; Mr. S. points to various instances where Ms. Balle noted rumination, need for control, distraction, avoidance, inability to be directed, evasiveness, hesitation, and dismissiveness. (*Id.* (citing Tr. 1954, 2052, 2149, 2151, 2162, 2164, 2199, 2202).) But these were merely observations during therapy—not examinations. The ALJ did not mischaracterize the evidence in finding the therapy records lacked "objective examinations."

The ALJ's consistency findings are also supported by substantial evidence. As the ALJ noted, Mr. S.'s treatment records documented consistently normal mental status examinations throughout the relevant time period. (*See, e.g.*, Tr. 1248, 1340, 1421, 2382.) And the ALJ cited recent treatment records indicating Mr. S. reported his medication was controlling his depression and anxiety. (*See id.* at 29 (citing *id.* at 2381–82).) The ALJ reasonably found this evidence inconsistent with the marked and moderate limitations assessed by Ms. Balle.

The ALJ also reasonably found Ms. Balle's opinions inconsistent with the prior administrative findings, which the ALJ determined were persuasive. (*See id.*) The agency consultants opined Mr. S. had moderate limitations in his ability to interact with others but only mild limitations in his ability to concentrate, persist, maintain pace, and adapt or manage

himself—and no limitations in understanding, remembering, or applying information. (*Id.* at 350, 374.) Unlike Ms. Balle, they opined Mr. S. was "not significantly limited" in his ability to get along with coworkers without distracting them or exhibiting behavioral extremes. (*Id.* at 355, 381.) The ALJ found these assessments "consistent with [Mr. S.'s] treatment notes, which showed some abnormal affect but otherwise intact cognitive functioning," and noted the consultants were knowledgeable about agency policy and evidentiary requirements. (*Id.* at 28.)

Mr. S. characterizes the prior administrative findings as stale, noting they were based on records from before the first administrative hearing. (Opening Br. 16–17, Doc. No. 17.) But, as set forth above, the ALJ also found Ms. Balle's opinions inconsistent with more recent treatment records. The ALJ reasonably considered both the prior administrative findings and subsequent medical evidence in assessing the consistency of Ms. Balle's opinions.

Mr. S. argues the ALJ improperly discounted Ms. Balle's opinions based on other inconsistent evidence from before the relevant time period. (Opening Br. 13–14, Doc. No. 17.) Specifically, the ALJ found Ms. Balle's opinion inconsistent with Dr. Houston's 2014 consultative examination and Mr. Garcia's June 2017 examination, which both predate the alleged onset date of October 24, 2017. (*See* Tr. 29; *see also id.* at 830-36, 1230-34.) Although evidence from before the relevant time period would not have been sufficient, on its own, to justify discounting Ms. Balle's opinions, the ALJ also identified substantial inconsistent evidence from within the relevant time period, as set forth above. Under these circumstances, the ALJ did not err in noting additional inconsistent evidence from before the relevant time period—particularly where Mr. S. alleged longstanding mental health conditions predating this period.

Finally, Mr. S. argues other evidence in the medical record supports Ms. Balle's opinions, citing numerous treatment records. (Opening Br. 14–16, Doc. No. 17.) But this argument merely asks the court to reweigh the evidence. Where, as here, substantial evidence supports the ALJ's findings, the court may not reweigh the evidence or substitute its judgment for that of the ALJ. *See Langley*, 373 F.3d at 1118.

Because the ALJ applied the correct legal framework, he explained how he considered supportability and consistency, and his assessment is supported by substantial evidence, the ALJ did not err in his evaluation of Ms. Balle's opinions.

B.  Mental RFC Determination

Mr. S. next argues the ALJ erred by failing to incorporate his findings regarding Mr. B.'s limitations under the "paragraph B" criteria at step three into his mental RFC determination. (Opening Br. 24–25, Doc. No. 17.) Specifically, he contends the RFC fails to account for the ALJ's finding that Mr. S. had moderate limitation in adapting or managing himself. (*Id.*)

"[T]he limitations identified in the 'paragraph B' and 'paragraph C' criteria are not an RFC assessment but are used to rate the severity of mental impairment(s) at steps 2 and 3 of the sequential evaluation process." Soc. Sec. Ruling 96-8p, 1996 SSR LEXIS 5, at *13. "The mental RFC assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraphs B and C of the adult mental disorders listings." *Id.*

The category of "adapt[ing] or manag[ing] oneself" refers to "the abilities to regulate emotions, control behavior, and maintain well-being in a work setting." 20 C.F.R. pt. 404, subpt. P, app. 1 § 12.00E.4. This includes "[r]esponding to demands; adapting to changes; managing [] psychologically based symptoms; distinguishing between acceptable and unacceptable work

17

performance; setting realistic goals; making plans . . . independently of others; [and] maintaining personal hygiene and attire appropriate to a work setting." *Id.*

In his assessment of the paragraph B criteria at step three, the ALJ found Mr. S. had a moderate limitation in adapting or managing himself. (Tr. 21.) The ALJ noted Mr. S. reported difficulties in personal care related to physical limitations and reported he did not handle stress or changes in routine well. (*Id.*) But the ALJ also noted Mr. S. said he was able to prepare his own meals, handle money, shop in stores, play board games and video games, and perform simple chores occasionally. (*Id.*) The ALJ also cited medical records documenting Mr. S. was appropriately groomed on examination and "consistently presented as alert, in no acute distress, and oriented with unremarkable insight and judgment." (*Id.*)

The ALJ's RFC determination adequately accounted for these findings. The ALJ determined Mr. S. could perform complex tasks, perform goal-oriented but not assembly line-paced work, occasionally interact with coworkers, supervisor, and the general public, and adapt to routine changes in the workplace. (*Id.*) The ALJ stated this RFC assessment reflected the degree of limitation he found in the "paragraph B" mental function analysis. (*Id.*) The restrictions to the pace of work and interactions with others, although primarily related to other paragraph B categories, could also accommodate moderate limitations in Mr. S.'s ability to handle stress and maintain personal care in the category of adapting and managing oneself.

Mr. S. argues ALJ's finding that he could adapt to routine changes in the workplace is inconsistent with the "paragraph B" assessment.[7] (Opening Br. 25, Doc. No. 17.) But the ALJ

---

[7] Mr. S. relies on *Parker v. Commissioner, Social Security Administration*, 922 F.3d 1169 (10th Cir. 2019), in support of this claim. But that case addressed an ALJ's failure to incorporate medical opinions regarding functional limitations into the RFC. *See id.* at 1171–73. *Parker* is inapplicable to the issue Mr. S. raises here—namely, whether the ALJ's RFC determination adequately incorporated his paragraph B findings.

merely noted Mr. S.'s subjective report that he struggled with changes in routine; he did not specifically find Mr. S. was limited in this area. (*See* Tr. 21.) The ALJ also determined Mr. S.'s activities of daily living suggested he was less limited than he reported. (*See id.*; *see also id.* at 23, 30 (noting Mr. S. sat on the board of directors of a nonprofit organization).) And the RFC finding does limit Mr. S. to work involving only routine changes, (*see id.* at 21), as opposed to unexpected changes. The ALJ's finding that Mr. S. was able to adapt to routine changes was not inconsistent with his finding of moderate limitations in the broad category of adapting or managing oneself. And Mr. S. does not suggest any other restrictions the ALJ should have included related to this category.

For these reasons, the ALJ's RFC determination adequately reflected his earlier findings regarding mental limitations. Mr. S. has not demonstrated any error in the ALJ's RFC assessment.

## CONCLUSION

The Commissioner's decision is AFFIRMED.

DATED this 30th day of September, 2022.

BY THE COURT:

_Daphne A. Oberg_
Daphne A. Oberg
United States Magistrate Judge